IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JUDY KEITH,                    )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-09-406-RAW
                               )
MICHAEL J. ASTRUE,             )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Judy Keith (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 5, 1958 and was 50 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked no past relevant work. Claimant alleges an inability to work beginning January 1, 2001, due to limitations resulting from back problems, liver problems, kidney

surgery, and depression.

**Procedural History**

On January 22, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On February 11, 2009, a video administrative hearing was held before ALJ Charles Headrick with Claimant appearing in McAlester, Oklahoma and the ALJ sitting in Tulsa, Oklahoma. On April 1, 2009, the ALJ issued an unfavorable decision on Claimant's application. On August 20, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to

consider all of the Claimant's impairments; (2) engaged in a faulty credibility analysis; (3) arriving at an unsupported RFC which did not accommodate all of Claimant's documented impairments; and (4) posing hypothetical questions to the vocational expert employed in the case which did not include all of Claimant's limitations.

## Step Two Analysis

Claimant asserts the ALJ erroneously failed to consider all of Claimant's impairments that are reflected in the medical record. The ALJ determined Claimant suffered from the severe impairments of blackout episodes, primary biliary cirrhosis, and major depression disorder. (Tr. 10). Claimant initially contends the ALJ should have included mental impairments for dissociative disorder, dysthemia, and personality disorder with prominent borderline traits. This contention is largely based upon the report of Dr. Theresa Horton.

On March 16, 2007, Dr. Horton completed a mental status examination of Claimant. Dr. Horton found Claimant could provide for her own personal hygiene, could do her own cooking and cleaning, and enjoys watching television to "escape." (Tr. 435). Claimant's thought processes were logical, organized and goal directed. She expressed a significant history of suicidal ideation but presented no other unusual thought content. Her mood was

predominantly depressed. Her affect was congruent and expressive. Her recall and memory were intact, concentration adequate, appeared to have an adequate fund of information, and of average intelligence. Claimant demonstrated appropriate judgment although her insight was poor. (Tr. 437).

Dr. Horton diagnosed Claimant at Axis I: Major Depressive Disorder, rule out Dissociation related to Somatization Disorder; Axis II: Personality Disorder, NOS with prominent borderline traits; Axis III: liver disease; and Axis IV: family problems, finances, access to healthcare. Id. Claimant was found to have very poor coping skills. She described wanting to escape from her problems and experiences dissociation one time per month. Dr. Horton noted very little history of treatment but found Claimant had been on psychiatric medication for the past four months. Much of her difficulty resulted from the presentation of the personality disorder but Dr. Horton found Claimant was capable of understanding and managing simple and complex tasks in a work related setting. (Tr. 438).

On November 11, 2008, Claimant was attended by Julia Medeiros, ARNP under the supervision of Dr. Steven Medeiros. Under the "Mental Health History" portion of the report, Medeiros includes "Generalized Anxiety Disorder" and "Major Depression." Under the

heading "Current Problems," notation is made of the mental health condition of "Depression with anxiety." (Tr. 569-97).

On December 27, 2006, Claimant was evaluated by Dr. Kenneth W. Foster. Among the findings in the resulting report, Dr. Foster found Claimant to suffer from PTSD. The report shows the condition was considered to be in remission. Although Claimant also contends Dr. Foster diagnosed bipolar disorder, the reference is not readily apparent. The copy of the report submitted as a part of the medical record in this case is admittedly difficult to read due to the poor quality of Dr. Foster's handwriting. (Tr. 424).

On March 30, 2006, Claimant was discharged from the Eastern Oklahoma Medical Center. Her diagnosis upon discharge was transient psychotic state, uncontrolled hypertension, panic attacks, and sinusitis. (Tr. 442). Claimant was alert, oriented and in no acute distress. Dr. Medeiros attributed her transient psychotic state to past abuse. (Tr. 443).

Claimant also contends the ALJ failed to include certain physical impairments in his assessment. Although Claimant states there exists prominent evidence of Plaintiff's kidney problems resulting in right flank pain, requiring the use of stents on several occasions, she does not specifically cite to any medical evidence in the record.

Claimant also repeatedly references chronic neck pain in her brief – again without citation to the pages in the record. Claimant apparently is referring to Dr. Stephanie E. Frisbie's reports from 2002. Other than the prescribing of Soma for the condition, no other information is provided to enlighten this Court of the nature and extent of the condition. (Tr. 369-74, 376-77).

As Defendant indicates, many of the conditions Claimant contends should have been included as impairments are contained in records which pre-date the adjudicated period. Further, Dr. Horton's diagnosis of major depressive disorder was included in the ALJ's step two evaluation. The other conditions diagnosed by Dr. Horton and the other mental and physical conditions do not rise to the level of impairments, given Claimant's progress in those areas. Both Dr. Horton's report concerning Claimant's mental health and that of Dr. David Wiegman related to Claimant's physical health indicate Claimant's improvement. (Tr. 517-19). The fact a condition has been diagnosed does not translate into a disability. See, Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). This Court finds the ALJ's exclusion of these conditions were supported by the medical record and find no error in this regard.

**Credibility Determination**

Claimant next contends the ALJ engaged in a faulty credibility assessment. The ALJ found Claimant's subjective complaints were not supported by the medical record. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc.

Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ went to great lengths to examine Claimant's credibility against the backdrop of these factors. This Court finds no error in his assessment and his findings are consistent with the objective medical record.

### RFC Determination

The ALJ determined in his decision that Claimant retained the RFC to perform light work, except that she should avoid concentrated exposure to hazards. He also found Claimant was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general pubic. (Tr. 11).

Claimant first contends the ALJ should have included an accommodation for psychotic episodes. Claimant relies upon his own testimony, the report of Dr. Horton and the report of Dr. Wiegman to support this finding. In the end, however, Claimant's testimony was appropriately challenged by the ALJ's findings. Dr. Horton concluded Claimant could still understand and manage simple and complex tasks in a work setting. (Tr. 16, 438). Dr. Wiegman only placed the limitation upon Claimant that she avoid dangerous places and situations where she could get hurt or hurt others. (Tr. 16, 519). The ALJ included these limitations in his RFC evaluation. (Tr. 11).

Claimant also contends additional limitations should have been included in her RFC for depression and anxiety. Again, Dr. Horton's conclusions of very limited restrictions caused by her conditions took into consideration both depression and anxiety. (Tr. 438). Additional limitations imposed by the ALJ, therefore, were not warranted.

On the physical aspects of Claimant's condition, she contends further limitations should have been provided for her neck pain and liver and kidney ailments. The medical record does not support additional limitations arising from these conditions. As a result, this Court finds no error in the ALJ's RFC determination.

### Hypothetical Questioning of the Vocational Expert

Claimant argues the ALJ's determination at step five is not supported by the evidence because the hypothetical questions submitted to the vocational expert at the administrative hearing did not include all of her impairments. The ALJ posed a hypothetical which assumed a person with the physical capacity to perform a full range of light work, that she should avoid all hazards, and that she has functional and mental limitations based upon the diagnosis from the DDS physician, Dr. Laura Lochner. (Tr. 523-36). The vocational expert was to assume a female with a hight school education, the ability to read, write and use numbers and

mental limitations consistent with the mental RFC provided by the DDS physician, Dr. Joseph Tramontana (Tr. 411-415). The vocational expert responded that jobs existed in the economy such as a bench assembler and parts assembler. (Tr. 50).

The ALJ's questioning included all of Claimant's impairments. Hargis v. Sullivan, 945F.2d 1482, 1492 (10th Cir. 1991). Since this Court found no error in the RFC assessment, the questioning which was consistent with the RFC was appropriate.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 15th day of March, 2011.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE